656 F.2d 387
 108 L.R.R.M. (BNA) 2227, 92 Lab.Cas. P 12,982
 FORD PARCEL SERVICE, INC., Appellant,
v.
MISCELLANEOUS DRIVERS AND HELPERS UNION NO. 610, affiliated
with the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, Appellee.
 No. 80-1960.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 19, 1981.
Decided Aug. 25, 1981.
 
 Harris, Dowell, Fisher, McCarthy & Kaemmerer, Ronald K. Fisher (argued), Michael E. Kaemmerer, St. Louis, Mo., for appellant, Ford Parcel Service, Inc.
 Clyde E. Craig (argued), Harry H. Craig, St. Louis, Mo., for appellee.
 Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 Ford Parcel Service, Inc. (Ford) appeals the district court's[1] adoption of a magistrate's[2] recommendation that a labor arbitrator's award be affirmed. The award involved Ford's refusal to give its employees, represented by Miscellaneous Drivers and Helpers Local Union 610 (the Union), a cost of living allowance in October 1979. The Union claimed the allowance was justified on the basis of their collective bargaining agreement and Ford disagreed. The labor arbitrator held for the Union. On appeal the district court affirmed the arbitrator's award. We affirm.
 
 
 2
 In the fall of 1977, representatives of Ford and the Union began negotiating an extension of their 1975 labor contract. On October 17, 1977, the parties reached an agreement which extended the original contract, with certain modifications, through August 28, 1981. Wages were not negotiated. The only provision dealing with wages repeated language contained in the 1975 agreement. It stated:
 
 1. Article XXIII. Wages
 
 3
 Wages shall be increased each year on April 1st. The increase shall be the increases (base increase plus cost of living) in the Central States Local Cartage Agreement.
 
 
 4
 In 1979, a new National Master Freight Agreement and Central States Area Local Cartage Supplemental Agreement were consummated for the period April 1, 1979, to March 31, 1982. The Union in the present case was not a signatory to these agreements. The agreement provided for cost of living wage adjustments on October 1, 1979, and four other dates throughout the 1979-82 period as follows: October 1, 1979; April 1, 1980; October 1, 1980; April 1, 1981; and April 1, 1982.
 
 
 5
 After receiving notice of the new agreement reached by the National Freight Negotiating Committee, which represents signatories to the 1979 agreement, that a cost of living wage increase was to be made on October 1, 1979, Ford refused to grant it on the basis that under its contract increases were to be made only on April 1 of each year. On October 16, 1979, the Union in the present case filed a grievance with Ford because of its refusal to grant the allowance.
 
 
 6
 After Ford refused to grant the grievance, an arbitrator heard the case. On February 7, 1980, the arbitrator issued his written opinion granting the grievance.
 
 
 7
 In substance, the arbitrator held that the employer, Ford, violated its contract with the Union by failing to grant the cost of living wage increase effective October 1, 1979, as provided in the Central States Cartage Agreement referred to in the 1975 agreement and listed as item one in the October "1977" (erroneously referred to as "1979") agreement. He noted, inter alia, that the employer's president did not claim surprise at the arbitration hearing because the cost of living "adjustments had been in the Employer's previous contract (1975) with the Union." The arbitrator issued an award directing the employer to modify wage scales by incorporating in them the cost of living wage increase scheduled by contract for October 1, 1979, and making whole the employees who had worked without the benefit of the wage increase.
 
 
 8
 Unfortunately, in the course of discussing his decision, the arbitrator erroneously stated that the October 17, 1977, agreement between Ford and the Union was reached on October 17, 1979. As part of the rationale for his decision, the arbitrator reasoned that because the parties intended to leave the prior wage provision unchanged and because the parties were aware that the national agreement had been reached earlier, the parties intended the cost of living increase to be made on October 1, 1979.[3]
 
 
 9
 Ford appealed the arbitrator's award to the district court which assigned the case to the magistrate. The magistrate's recommendation was that the arbitrator's award should be affirmed. He found the erroneous date did not justify reversal because the date was not a critical factor in the arbitrator's decision. Further, he concluded there was sufficient record support for the arbitrator's conclusion that the wage provision in the "1977" agreement continued the wage provision of the 1975 agreement and thereby the provisions in the National Master Freight Agreement with respect to wages, including cost of living allowances, were applicable. The district court adopted the magistrate's recommendation.
 
 
 10
 Among other challenges to the arbitrator's award, Ford claims the decision must be vacated because of the misstatement of the date of the execution of the contract. The Union replies that because the date was not critical to the arbitrator's decision and because of the restraints placed on review of a labor arbitrator's decision, we should affirm the district court and the arbitrator.
 
 
 11
 Judicial review of his award is limited to the question of whether it "draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); Kewanee Machinery Division v. Local Union No. 21, International Brotherhood of Teamsters, 593 F.2d 314, 317-18 (8th Cir. 1979); General Drivers Local No. 120 v. Sears, Roebuck & Co., 535 F.2d 1072, 1075 (8th Cir. 1976); Western Iowa Pork Co. v. National Brotherhood Packinghouse & Dairy Workers, Local No. 52, 366 F.2d 275, 277-78 (8th Cir. 1966).
 
 
 12
 "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted).
 
 
 13
 This standard is designed to encourage the resolution of labor disputes through arbitration. See United Steelworkers v. American Manufacturing Co., supra, 363 U.S. at 566-69, 80 S.Ct. at 1345-47; United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361; United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583-85, 80 S.Ct. 1347, 1353-54, 4 L.Ed.2d 1409 (1960); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 449-57, 77 S.Ct. 912, 914-18, 1 L.Ed.2d 972 (1957); Kansas City Royals Baseball Corp. v. Major League Baseball Players Ass'n, 532 F.2d 615, 620-21 (8th Cir. 1976).
 
 
 14
 In view of these standards and the factors relied upon by the arbitrator, we are not persuaded to reverse the district court and vacate the arbitrator's award. Although the arbitrator's determination that the parties were aware of the national agreement when they entered the "1979" contract was erroneous as to the date of the contract, we cannot say the error was sufficiently critical to require vacating the decision. His reliance on other factors, especially the parties' general treatment of wages and their intent to incorporate the national agreement, with respect to wages and cost of living increases, provided an adequate basis for his holding.
 
 
 15
 Ford also claims that the contract language was so clear and unambiguous that the arbitrator acted beyond his authority in reaching his decision. We reject this contention. Arguably the contract provision found in 1. Article XXIII Wages, supra, does not explicitly make April 1 the exclusive date for wage increases. Furthermore, the following sentence of this provision incorporates the national agreement's provisions regarding cost of living increases without setting dates. The provision as a whole is far from being clear and unambiguous and is susceptible to the arbitrator's interpretation.
 
 
 16
 We have examined Ford's other arguments challenging the arbitrator's decision and we find them unconvincing. We therefore affirm the district court.
 
 
 
 [1]
 The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri
 
 
 [3]
 Part of the arbitrator's rationale, as stated in his conclusion, was as follows:
 In some circumstances perhaps I could believe that the words "increased each year on April 1st" in item one of the extension mean that the parties are modifying the cost of living provision of their contract.
 But not in these circumstances, not when no word of discussion about the topic was uttered by their negotiators, And surely not when the parties, as here, had just received notice that the October 1979 adjustment would soon be due as provided by the National Master Agreement. To accept the Employer's position would be to eliminate the October adjustments of 1979 and 1980. No such intent was expressed by the parties.